## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

ANDREW IORIO and AI CONSULTING, LLC, : Civil Action No.

      Plaintiffs  :
           :

    v.       :
           :

@WIRELESS LLC, CRAIG J. JERABECK, 5LINX, :
           :

      Defendants  :

## COMPLAINT

## I. JURISDICTION AND VENUE

1. This is an action brought pursuant to Fed.R.Civ.P. 60(d) in accordance with the order of

the United States Court of Appeals for the Second Circuit holding that authorization was

not necessary (See Exhibit A hereto).  It seeks to set aside the December 19, 2011 and

February 10, 2012 order and judgment of the United States District Court for the

Western District of New York (Siragusa, J.), granting summary judgment to @Wireless

on the balance of a promissory note owed by AI and for other relief.

2.  This Court has jurisdiction of the action under 28 U.S.C. § 1332 (diversity of

citizenship), because the plaintiffs and defendants are citizens of different states, and

the amount in controversy exceeds $75,000, exclusive of interest and  costs.

3.  Venue lies in this judicial district pursuant to 28 U.S.C. §1391 (b)(2), as a

substantial number of events giving rise to the claims occurred in this judicial

district.

4.  This Court has i*n personam* jurisdiction over the defendants, as they transacted business in the State of Connecticut in connection with the matters at i ssue.

## II, THE PARTIES

5.     The defendant, @Wireless, a Delaware corporation with its principal place of business at 50 Methodist Hill Drive, Suite 1500, Rochester, New York 14623 ("@Wireless") and is in the business of selling cellular radio service and goods. @Wireless brought a complaint in United States District Court for the Western District of New York against AI Consulting LLC ("AI") and Andrew J. Iorio ("Andy"), who answered and     filed     eight     counterclaims against @Wireless.

6.  AI, whose principal place of business was at 1173 Queen Street, Southington, CT 06489, until being forced out of business by the defendants, is a Connecticut Limited Liability Corporation and citizen of the State of Connecticut, (hereafter AI) and:

      a.  As is delimited below, was a contractor/agent of Cellco and @Wireless;  and

      b.  Became such a contractor/agent on March 1, 2002 for an investment  of $145,000,00; and

    c.  During the period of January-September 2004, as such a contractor/agent, grossed some $262,954.60 while generating a net income to its co-owners of  some $55,355.94 and greatly increasing its goodwill; and

    d.  Was paying $3,000.00/ month on the note to purchase it, which, upon the final payment in September of 2005, would have been further net income to its owners/operators described below; and

    e.  Was on an azimuth to reach a gross annual sales of $1,600,000.00/year, a net income of $250,000.00/year and further greatly increasing its goodwill; and

    f.  Had Total Liabilities & Equity as of September 30, 2004 of  $64,454.12.

7. Andy, age 62, whose home address is 22 Palestine Road, Newtown, Connecticut 06470, is a citizen of the State of Connecticut and the co-owner/ sole managing member of AI, a Connecticut Limited Liability Company.

8. Defendant Jerabeck is the Chief Executive Officer of @Wireless and the President and sole shareholder of 5Link and is a domiciliary of the State of New York.

9. Upon information and belief, 5Link is a Delaware corporation with its principal place of business in the State of New York.

## **STATEMENT OF THE CASE**

### A. Introduction– The Course of Earlier Proceedings

10. Plaintiffs filed a complaint September 15, 2006, originally naming four defendants, including @Wireless Enterprises, Inc. ("@Wireless") and Cellco Partnership doing business as Verizon Wireless and Verizon Trademark Services LLC.

11

11. On November 16, 2006, the parties stipulated to the dismissal of Cellco Partnership doing business as Verizon Wireless and Verizon Trademark Services LLC. Then, on January 29, 2008, Plaintiffs filed a notice of voluntary dismissal with regard to @Wireless.

12. On August 19, 2008, insofar as here pertinent, the district court denied Jerabeck's motion to dismiss. In doing so, the court made findings of fact, which Plaintiffs allege in paragraphs 13- 17 below

13. Verizon was a wireless communications service provider, which sold cellular radio service and equipment through its own retail stores, as well as through agents. @Wireless sold cellular communications services. In August 2000, Verizon and @Wireless entered into an "Authorized Agency Agreement," in which Verizon appointed @Wireless as a "non-exclusive sales agent" for Verizon's cellular radio service. The agreement provided that @Wireless could delegate its obligations under the contract to "a subcontractor or sub-agent," by written contract, subject to the express written approval of Verizon. The agreement further stated: "Personnel employed by, or acting under the authority of, Agent shall not be or be deemed to be employees or agents of Verizon Wireless, and Agent assumes full responsibility for their acts and shall have sole responsibility for their supervision and control." (Agency Agreement § 2)

14. As part of the agreement, @Wireless agreed to certain restrictions on its ability to sell Verizon's products and the products of Verizon's competitors. For example, @Wireless agreed that it would sell Verizon's products only within specified geographic areas. The agreement further stated that the parties could terminate the agreement under certain conditions. For example, the agreement stated that Verizon could "immediately terminate" the agreement upon written notice to @Wireless, if @Wireless breached the agreement. ( Id. § 9.1.1) As to

that, the agreement also stated that, "[u]pon termination of this Agreement for any reason, all rights and privileges granted to Agent hereunder shall immediately terminate." ( Id. § 7.9.2)

15. Exercising its right to hire sub-agents, @Wireless entered into a franchise agreement with third-party plaintiff AI Consulting ("AI") in March 2002, in exchange for a $145,000 franchise fee payment from AI to @Wireless. Subsequently, AI operated a retail outlet as an @Wireless franchisee in Southington, Connecticut. During the course of the business relationship between AI and @Wireless, AI dealt directly with third-party defendant Craig Jerabeck ("Jerabeck"), who was at all relevant times President of @Wireless. According to AI, Jerabeck told AI that he would "protect the interests of AI." (TPC ¶ 14)

16.  Unbeknownst to AI, between 2002 and 2004, @Wireless repeatedly breached the agreement with Verizon by, for example, selling products and services of Verizon's competitors. Although Verizon gave @Wireless numerous opportunities to cure the breaches, @Wireless continued to breach the agreement. AI contends that third-party defendant 5Linx, of which Jerabeck was the President and sole shareholder, and which was "affiliated" with @Wireless, also made unauthorized sales of Verizon's products on its website during this period. Verizon complained to Jerabeck about the actions of both @Wireless and 5Linx, and, according to AI, Jerabeck indicated that @Wireless and 5Linx would cease making unauthorized sales. AI contends, however, that Jerabeck lied, and that both @Wireless and 5Linx continued as before. Jerabeck did not inform AI of these unauthorized sales by @Wireless and 5Linx, or of the resulting problems with Verizon. For example, Jerabeck did not inform AI that, in July 2004, Verizon had notified @Wireless that it was in breach of the

11

agreement and that Verizon had decided to terminate the agreement. Instead, on or about September 10, 2004, Jerabeck sent an email to AI, informing it only that @Wireless was in the process of negotiating a new contract with Verizon, which would not affect AI's "day to day operations.

17. Verizon stopped providing service to @Wireless and @Wireless's franchisees, including AI, on or about September 16, 2004. Verizon also simultaneously commenced an action against @Wireless in the United States District Court for the District of New Jersey. @Wireless then sued Verizon in New York State Supreme Court, Monroe County, on or about September 21, 2004. @Wireless and Verizon subsequently settled the lawsuits and terminated their agreement. As a result, @Wireless and its franchisees, including AI, could no longer lawfully sell Verizon products. A short time later, Verizon opened a competing retail store "almost immediately adjacent" to AI's business.

18. Eventually, the district court granted summary judgment to @Wireless and Jeraback, and on the promissory note by A1, which was affirmed by the United Stated Court of Appeals for the Second Circuit.

## B. Subsequent Events

19. Since the Second Circuit's affirmance, a grand jury sitting in the Western District of New York handed up a 37-count indictment charging three former owners of 5LINX with fraud. The indictment accused defendant Craig Jerabeck and his partners with, among other things 29 counts of wire fraud and one count of conspiracy to commit wire fraud.

20. Jerabeck has entered into a negotiated plea in which he, among other things, agreed to testify against the others (See Exhibit B hereto).

## Set Aside Judgment for Fraud

21. Plaintiffs acted promptly upon learning of the indictment and guilty plea.

22. A motion was made in the Second Circuit for permission to bring such an action, and held to be unnecessary.

23. This Court has jurisdiction as an independent action may be brought in a court other than the one that gave judgment as long as there are independent grounds of jurisdiction.

24. The criminal conduct charged against the defendants were fraudulent in that they had deceived Al and Andy and in that they violated the trust  and confidence, which they justifiably reposed in  @Wireless and allowing the judgment against the Plaintiffs to remain would constituted "a grave miscarriage of justice."

## PRAYER FOR
## RELIEF

Plaintiffs request the following relief:

1.  The judgment against them should be set aside;

2.  The plaintiffs should be awarded equitable damages to make them whole;

3.  An award of plaintiff's costs of suit.

4.  An award for plaintiff's past and future attorneys fees.

5.  All other relief that is just, proper, or equitable under the circumstances.

Respectfully submitted.


THE PLAINTIFF,


BY   CT-14172
EDDI Z. ZYKO, ESQUIRE
120 FENN ROAD
MIDDLEBURY, CT 06762
FEDERAL BAR NO. CT-14172
TEL NO: 203-758-8119
FAX NO: 203-598-7994
E-mail: eddi_z_zyko@snet.net